UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| M/V ALTRO DONNA, L.L.C. | * | |
| ZITO FLEETING, L.L.C. | * | |
| OCTOPUS TOWING, L.L.C.,OSPREY | * | |
| UNDERWRITING AGENCY, LTD., | * | |
| INDIVIDUALLY AND FOR AND ON | * | |
| BEHALF OF CERTAIN UNDERWRITERS | * | |
| AT LLOYD'S OF LONDON, SUBSCRIBING | * | |
| SEVERALLY AND NOT JOINTLY | * | |
| | * | |
| VERSUS | * | CIVIL ACTION NO.  13-5197 |
| | * | |
| TERRAQUEST GROUP L.L.C., *in personam* | * | |
| AND BROWNFIELD RESTORATION L.L.C., | * | |
| *in personam* | * | SECTION "S" |
| | * | |
| | * | MAGISTRATE: 3 |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## OBJECTIONS TO REPORT AND RECOMMENDATIONS (Rec. Doc. 134)

**MAY IT PLEASE THE COURT:**

Plaintiffs respectfully object to the Magistrate Judge's report and recommendations of 7th January 2016 wherein he found there was no settlement and recommended to place this case back on the trial docket.[1]

The parties participated in two settlement conferences before the Magistrate Judge. At the conclusion of the second settlement conference on August 19, 2015, the Magistrate Judge issued an order advising, "Following discussions among the parties, the above-captioned case has settled."[2]  In his report, the Magistrate Judge found, "It is undisputed that the parties reached an agreement on the material terms of a settlement, i.e., the sum certain."[3] The Magistrate Judge also noted third-party indemnity language was not

---

[1] Rec. Doc. 134, p.7.
[2] Rec. Doc. 113.
[3] Rec. Doc. 134, p. 6.

negotiated during the settlement conference.[4]  Still, the Magistrate Judge's report concludes there is no settlement because "[h]ere, plaintiffs did not agree to release the Port from third-party claims, and the Port intended that they would, as is typically done in this circuit. There is thus no settlement here."[5]

"The Fifth Circuit regards a settlement agreement as a contract, and courts are instructed to enforce them as they would a contract."[6]  "The formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and consideration."[7] During the second settlement conference, the parties reached a settlement.  The defendants are to pay a sum certain and the plaintiffs are to dismiss their claim.  Therefore a contract was formed. After a contract was created (the settlement agreement), only then did the Port ask for an additional term - third party indemnification. The Port is not entitled to add terms, after the fact, to a contract it reached, nor should the Port be able to vitiate the settlement agreement it entered into. There is a binding and valid contract for settlement.  Plaintiffs respectfully move the Court not accept the report and recommendation of the Magistrate Judge and instead to enforce the settlement agreement entered into between the parties.

### Standard of Review

Objections to a magistrate judge's report and recommendations must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of the report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A district judge may modify or set aside an order if it is "clearly erroneous or contrary to law." *Id.* Interpretation of a maritime contract is ordinarily a question of law. See *Becker v. Tidewater, Inc.*, 586 F.3d 658, 369 (5th Cir. 2009) (pertaining to indemnity language in a contract).

---

[4] Rec. Doc. 134, p. 6.
[5] Rec. Doc. 134, p. 6-7.
[6] Rec. Doc. 134, p. 6 citing Guidry v. Halliburton Geophysical Servs, 976 F. 2d 938, 940 (5th Cir. 1992).
[7] *Angel v. Royal Caribbean Cruises, Ltd.*, No. 02-20409-CIV, 2002 WL 31553524, at *4 (S.D. Fla. Oct. 22, 2002), citing *Restatement (Second) of Contracts* § 17 (1981).

**Facts**

On the late evening of April 5th and early morning of April 6, 2012, the M/V ALTRO DONNA struck an unmarked and submerged object.  Shortly thereafter, the M/V ALTRO DONNA sunk.  It is contested as to what the M/V ALTRO DONNA struck.  Plaintiffs believe the evidence (e.g. underwater sonar survey) indicates the M/V ALTRO DONNA allided with a submerged and unmarked dolphin located in a former barge berthing area owned by the Port.  The Port admitted in discovery to owning the dolphins in the path of the M/V ALTRO DONNA.   Plaintiffs set forth claims and causes of action in their Complaint and Supplemental Complaints for the full amount of damages sustained by plaintiffs as a result of the allision and sinking of the M/V ALTRO DONNA.  The plaintiffs are comprised of the owner and operator of the sunken vessel owner along with their P&I and Hull underwriters for their respective subrogation claim for amounts paid resulting from the M/V ALTRO DONNA's sinking.

After considerable discovery by the Port, the Plaintiffs and the Port participated in two settlement conferences before Magistrate Knowles.  The second settlement conference on August 19, 2015 was successful and the parties reached a settlement.   Magistrate Knowles issued an Order stating in pertinent part: "Following discussions among the parties, the above-captioned case has settled. District Judge's chambers have been notified. Counsel and the parties are thanked for their cooperation in amicably resolving this matter."[8] Participating in the settlement conference was counsel for the Port along with the Port's representative, Mr. Joseph Fritz, who is in-house counsel for the Port.  The Port does not dispute "the amount of the settlement or any party's authority to enter into settlement in this litigation."[9]

---

[8] Rec. Doc. 113.
[9] Rec. Doc. 117-Opposition to Plaintiff's Motion to Enforce Settlement submitted by the Port, p. 1.

The Port concedes that "By the end of the Settlement Conference, the only settlement items agreed upon by the parties were: 1) the fact that the parties would enter into a settlement; and 2) the amount of the settlement payment from the Port to the plaintiffs."[10]   Third party indemnification was never discussed during the settlement conference. The Port did not make third party indemnification a condition of the settlement.

Following the August 19, 2015 settlement conference, Port's counsel contacted the undersigned and advised they would be preparing the settlement documents and requested instruction on how to issue settlement funds.[11]   Undersigned counsel forwarded payment instructions and requested confirmation that settlement funds be received within thirty (30) days of the settlement conference.[12]

Port's counsel advised it was their experience that settlement funds would be paid within thirty days of receipt of a signed release.   Port's counsel forwarded a proposed release, which contained third party indemnity obligations on behalf of the plaintiffs.[13]   Third party indemnity was not discussed at either of the settlement conferences. The first time indemnification was mentioned and/or requested by the Port was when the Port produced its proposed release agreement.   The Port is withholding payment of the agreed upon settlement because the plaintiffs have objected to terms regarding third party indemnification in the Port's proposed release, which were never discussed or negotiated during settlement negotiations.

## Law and Argument

### A.      There is a contract so the settlement should be enforced.

This Court should accept the facts in the Magistrate Judge's report and

---

[10] *Id.* at p. 2.
[11] Rec. Doc. 116-3-Exhibit A- *in globo* emails between Port's counsel and undersigned counsel.  See August 28, 2015 email from Port's counsel.  The amount of settlement has been redacted.
[12] Rec. Doc. 116-3-Exhibit A-in globo emails. See August 31, 2015 response email from undersigned counsel.
[13] *Id.*

recommendations in full and still find in favor of plaintiffs.  As the Magistrate Judge concluded, it is undisputed that the parties reached an agreement on the material terms of the settlement. Plaintiffs sued the Port, alleging their vessel sank because it hit a submerged dolphin in the Mississippi River.[14]  The Magistrate Judge and the parties also agree about how the settlement was reached at the August 19, 2015 settlement conference with Judge Knowles.  The Port made an offer, which the plaintiffs accepted.  A contract was formed.  Judge Knowles notified this Court a settlement had been reached.[15]  During the settlement conference, neither third party indemnification nor a confidentiality clause were ever discussed.  In fact, these two items (indemnification and confidentiality) were first brought up when the Port sent the draft of a proposed release several days after the successful settlement conference.

Plaintiffs agree with the Magistrate Judge's case law. As the Magistrate Judge notes, "[u]nder maritime law, an oral agreement to settle a case or controversy is binding and is commonplace in the industry. *Kossick v. United Fruit Co.*, 365 U.S. 731, 734 (1961). Settlement agreements are favored. See *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). Because it is presumed that the parties making settlements have consulted their own interests, settlement agreements should not be taken lightly or be interfered with or impeached. *Thibaut v. Ourso*, 605 F.Supp. 1, 2-3 (M.D. La.1981).  "It is well settled that in the absence of fraud, mistake, or other circumstance going to the validity of the agreement, a settlement voluntarily entered into cannot be repudiated by either party or set aside by the court." *E.N. Bisso & Son, Inc. v. World Marine Transp. & Salvage,* 1996 WL 28520, at *5 (E.D. La. 1996).

Plaintiffs respectfully object to the Magistrate Judge's conclusion. After noting that a contract requires offer, acceptance, and consideration, and after concluding all three are present here, the Magistrate Judge then recommended that this Court conclude there was no meeting of the minds because the parties did not discuss, or agree about, third-party indemnity.

---

[14] Rec. Doc. 134 at p. 1 – 2.
[15] Rec. Doc. 113.

However, agreement over every possible term is not a requirement for a contract; agreement over the essential elements makes a contract. The Parties agreed upon the essential elements at the settlement conference. It was not until well after the case was settled, did the Port even mention third party indemnity.

This Court faces an issue of contractual silence, not the absence of a contract. In the face of contractual silence, the Court's task is to determine the parties' intentions because "the understanding of each promisor in a contract must include any promises which a reasonable person in the position of the promisee would be justified in understanding were included." See *Rowe v. Great Atlantic & Pac. Tea Co., Inc.*, 46 N.Y.2d 62, 69 (N.Y.1978) (quoting 5 Williston on Contracts § 1293 (rev. ed.1937)); See also *Reed v. Florida Metropolitan University, Inc.*, 681 F.3d 630, 641 (5th Cir. 2012) (concluding silence in a contract did not permit class arbitration under martime law). "Courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include." *Rowe*, 46 N.Y 2d at 72. "[S]uch lack of foresight does not create rights or obligations" *Mutual Life Ins. Co. of N. Y. v Tailored Woman*, 309 N.Y. 248, 253 (N.Y. 1955).

**B.    This Court's precedent indicates that in the face of silence in a settlement contract, this Court should not read in additional terms, including indemnity.**

The question for this Court is not whether there is a contract; the question for this Court is <u>what</u> the contractual terms are. To determine the contractual terms in the face of silence, courts look at the parties' reasonable expectations. Fortunately there is precedent on point: *Orgulf Transport Co. v. Magnolia Marine Transport*, No. Civ. A. 97-1411, 1999 WL 694099 (E.D. La. Sept. 3, 1999) (Duval, J.) and *Berger, et al v. USAA General Indemnity Co.*, C/A No. 2008 WL 1730533 06-11151 (E.D. La. Apr. 10 2008) (Barbier, J.).

*Orgulf* is directly on point. The parties settled a claim. After settling, the defendant wanted indemnity for third-party claims. The plaintiff refused. Judge Duval upheld the settlement as written.

> Had the defendants wanted to be indemnified as to third-parties, the defendants should have predicated their acceptance thereon. They were silent. [. . .] the Court finds the silence to mean that it was not a term of the settlement.[16]

In *Berger*, the defendant and plaintiff settled, then the defendant wanted to include a confidentiality clause.  Judge Barbier ruled 'no':

> The ultimate question is not whether USAA is substantially justified in wanting any settlement agreement to include a confidentiality provision. The question is whether, after an agreement was crafted that did not include a confidentiality provision, USAA was substantially justified in its position that confidentiality either had been agreed to or should have been agreed to. USAA has not made any showing to that effect.[17]

Taken together, the decisions show the rule:  if you want additional terms to a settlement agreement, ask for it before you settle. The Port failed to discuss or ask for third-party indemnity during the August 19, 2015 settlement conference before Judge Knowles. The Port is not entitled to third-party indemnity.

The Magistrate Judge distinguishes *Orgulf* because there the third-party claims were known; here, they are not. As the Magistrate Judge described:

> Here, however, no third-party claims are pending, and the third parties are nameless, faceless, and hypothetical individuals and or entities. There are no third-party claims pending here. Because there are no third-party claims here, there was no reason for the parties to negotiate for any indemnity from them. And because the parties had no notice of any pending claim, they failed to do so and failed to even think such negotiations were necessary [. . .].[18]

Whether or not the claims are known has no bearing on whether or not the defendant should ask for them, nor on whether or not they could form part of a contract. No party has brought a third-party claim against the plaintiffs or the Port in this, or in any litigation. The Port may not have thought to ask for indemnity against unknown claims before it agreed to settlement terms, but the Port's failure to think of the possibility should not allow it to scuttle a

---

[16] *Orgulf* at *3.

[17] *Berger* at *3.
[18] Rec. Doc. 134, p. 7.

settlement to which it already agreed. If anything, the absence of a third-party claim should make the Port's efforts to void the contract weaker because there is no reason to expect indemnity for an unknown, unpredictable claim. Further, forcing the plaintiffs to accept third party indemnification would expand their potential exposure beyond what existed before the accident.

**C.      There is no usage requiring third-party indemnity.**

The Port argues it is custom – usage of trade, properly described – to include third-party indemnity and relies upon the Port's counsel's many years of experience as the only authority for this proposition.  In some instances, such as when there is a course of dealing, usage can add terms to a contract. See *One Beacon Ins. Co. v. Crowley Marine Services, Inc.*, 648 F.3d 258, 265 (5th Cir. 2011), citing Restatement (Second) of Contracts § 223(1) (1981).[19]  This is not one of those instances.

The Restatement describes usage of trade as "a usage having such regularity of observance in a place, vocation, or trade to justify an expectation that it will be observed with regard to a particular agreement." Restatement (Second) of Contracts § 222(1). The Restatement continues, explaining usage is a question of fact. For the reasons set forth in plaintiffs' post-hearing memorandum, Rec. Doc. 131, it is not and cannot be usage for the plaintiffs to indemnify the Port for third-party claims.  More significantly, the Port presented the Magistrate Judge with no evidence to establish there is a custom of including indemnity for third party claims as part of a settlement, other than counsel's self-serving recollection. The Magistrate Judge stated, "Here, plaintiffs did not agree to release the Port from third-party claims, and the Port intended that they would, as is typically done in this circuit."[20]  We

---

[19] Federal maritime law on contracts turns to the Restatement in the absence of controlling federal maritime precedent. See *International Marine, LLC v. FDT, LLC,* 619 Fed. Appx. 342, No. 14-31192, 2015 WL 4720257 at *5 (5th Cir. Aug. 10, 2015), citing *Univ. of Tex. Sys. v. United States*, 759 F.3d 437, 443 (5th Cir. 2014).
[20] Rec. Doc. 134, p. 6-7.

respectfully disagree that third party indemnity is custom in this circuit.  That certainly has not been the experience of the undersign and this includes cases pending in the Eastern District that have settled during settlement conferences.

If the case were tried to conclusion, the judgment would release the Port from any claims that were brought, or that must have been brought under Fed. R. Civ. P. 19, required joinder. It would not release the Port from third-party liability. A settlement is no different. The Port is only released from any claims that were brought by the plaintiffs, or that must have been brought concurrently with these claims. The Port is released from every claim encompassed by an order of dismissal with prejudice. The Port cannot expand its relief by settling, unless it asks for the expanded relief in the settlement negotiation.  The Port has not made any such request.

Allowing usage here to add indemnity to the Port's benefit would contradict *Orgulf*. It would also lead to two perverse results.  First, the plaintiffs – the injured parties, could conceivably become worse-off because they settled their claim.  Imagine a deckhand on the M/V ALTRO DONNA files suit in the coming months against both plaintiffs and the Port. Assume the deckhand is entitled to collect. The Port's request for indemnity, if allowed, would mean the Port escapes liability entirely and the plaintiffs pay the deckhand for the Port's fault.  Indemnity for the Port would give the underwriters a risk they neither negotiated, contracted for nor foresaw.  Second, the Magistrate Judge's recommendation, if followed, would allow any party who enters into a settlement agreement an opt-out clause. The party with second thoughts could think of a term in the settlement agreement not negotiated, then use that to vitiate the contract and re-set the case for trial. Such a result runs contrary to the preference for settlement, threatens the finality of agreements, and frustrates both litigants and the Court.  The Magistrate Judge nor the Port cite case law to support the position that additional terms can be added after a settlement is confected.

## Conclusion

The Magistrate Judge found in his report that, "It is undisputed that the parties reached an agreement on the material terms of a settlement, i.e., the sum certain."[21] The Magistrate Judge noted third-party indemnity language was not negotiated during the settlement conference.[22]  Judge Barbier and Judge Duval have held that if a party wants additional terms to a settlement agreement, then the party needs to ask for it before they settle. The Port failed to ask for third-party indemnity during the August 19, 2015 settlement conference before Judge Knowles.   Accordingly, the Port is not entitled to third-party indemnity now.

The plaintiffs respectfully request the Court decline to accept the Magistrate Judge's recommendation to place this case back on the trial docket because it is contrary to law. The plaintiffs respectfully request this Court enforce the settlement entered into on August 19, 2015 and order the Port to pay the agreed upon settlement amount to the Plaintiffs.

**Respectfully submitted,**

**DUNCAN & SEVIN, L.L.C.**

_____
KELLEY A. SEVIN, T.A. (#25871)
400 Poydras Street, Suite 1200
New Orleans, LA  70130
Telephone: (504) 524-5566
E-Mail: ksevin@duncansevin.com
Attorney for Plaintiffs,
Octopus Towing L.L.C., Zito Fleeting, L.L.C., M/V ALTRO DONNA, L.L.C. Osprey Underwriting Agency, Ltd., individually and for and on behalf of Certain Underwriters at Lloyd's of London, subscribing severally and not jointly, to Hull & Machinery Policy M11PH0308 and Protection and Indemnity policy M11PP03030.

---

[21] Rec. Doc. 134, p. 6.
[22] Rec. Doc. 134, p. 6.

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of January, 2016 a copy of the above and foregoing was filed electronically with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

_____

**KELLEY A. SEVIN**